NOT DESIGNATED FOR PUBLICATION

No. 128,556

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GRATTON CURTIS ODELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Submitted without oral argument. Opinion filed August 7, 2026. Affirmed.

*Grace E. Tran*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before BOLTON FLEMING, P.J., ISHERWOOD and COBLE, JJ.

ISHERWOOD, J.: Gratton Curtis Odell was the beneficiary in plea negotiations that required him to plead either guilty or no contest to four charges and return to court for resentencing once released on his own recognizance. For its part, despite Odell's criminal history score of A, the State agreed to dismiss his remaining charges, as well as an entirely separate pending case. With respect to the crimes of conviction, the State agreed to recommend standard sentences to be served concurrently and suspended to 24 months of supervised probation.

1

Odell failed to return for his scheduled sentencing hearing, so his presence was secured for the rescheduled proceeding via a bench warrant. The district court denied his request for a dispositional departure and imposed consecutive standard sentences for his felony convictions but ordered that the jail term for his lone misdemeanor run concurrent with his prison sentence. Now on appeal, Odell argues that a new sentencing hearing is warranted because the State breached the plea agreement when it failed to bolster his request for a dispositional departure. We find that while the State sidestepped its obligation to recommend a departure as contemplated by the terms of the parties' agreement, its failure to honor that commitment was harmless in light of the facts and circumstances of this case. Accordingly, the sentence imposed by the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Odell was charged with two counts of battery of a law enforcement officer and one count each of aggravated intimidation of a witness, aggravated domestic battery, aggravated escape, interference with a law enforcement officer, and domestic battery. He ultimately opted to enter into an oral plea agreement with the State, under which he pleaded no contest to three felonies, including aggravated domestic battery, aggravated escape, interference with a law enforcement officer, and one misdemeanor count of battery on a law enforcement officer. In exchange, the State agreed to dismiss the remaining charges and a separate case, recommend that Odell's sentences run concurrent, with the sentence suspended to 24 months supervised probation, and agree to a release on his own recognizance (O.R.) while awaiting sentencing. Prior to sentencing, Odell's counsel moved for a dispositional departure and noted that the State joined the request.

Sentencing was initially scheduled for November 1, 2024, but Odell failed to appear. The judge made contact with Odell by phone, and Odell assured her that he was not far away and would arrive in approximately 20 minutes. That time came and went, so

Odell's counsel called him once more and placed the call on speaker mode. The judge asked Odell whether he lied to her previously when he assured her that he was en route, and Odell responded in the affirmative. He acknowledged that his conduct did not bode well for his request for a departure to probation, and rather than disclose his location as requested by the judge, Odell instead opted to disconnect the call.

The sentencing hearing was rescheduled, and a bench warrant was issued to secure Odell's presence. In response to the district court's request for sentencing recommendations, the State offered that probation was not a prudent option as there was a considerable likelihood it would be revoked given Odell's "willingness to flout the law." Neither Odell nor his counsel objected to the State's sentencing recommendation.

The district court denied Odell's motion for dispositional departure. In so doing, it noted his lack of candor at the initial sentencing hearing and explained that the warrant issued in response to his failure to appear resulted in "a standoff that required a SWAT team, law enforcement." The judge ultimately imposed a total prison term of 46 months and advised Odell:

> "[A]s I've looked back through your criminal history, looked back through the history of these cases, and just reflecting upon my knowledge of you throughout the times that you've appeared before me in various courts, I have a lot of concern that putting you on probation would not necessarily be a good use of the resources that are available."

Odell now brings his case before this court and, for the first time, asserts that the State breached the plea agreement when it declined to recommend probation at sentencing. Additional facts are included where necessary to our analysis of his claim.

3

Odell asserts that his decision to enter a plea in his case was induced by the State's promise to submit a joint recommendation for probation at sentencing. Thus, when the State failed to follow through on its promise to do so, it amounted to a breach of the plea agreement that can only be remedied by vacating his sentence and remanding the case for resentencing before a different judge. He further argues that the facts and circumstances of his case belie any claim that the issue meets the threshold for what constitutes a harmless error in this context. The State counters that Odell is impermissibly raising this issue for the first time on appeal and fails to meet any of the exceptions that may enable him to overcome the prohibition on reviewing unpreserved claims. It contends that to the extent this court opts to analyze the merits of Odell's claim, the State's sentencing recommendation falls well within what is properly considered harmless in cases of this nature.

*Applicable Legal Principles*

An allegation that the State breached a plea agreement presents a question of law over which appellate courts exercise unlimited review. *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 (2013). We frequently look to the legal rubric embodied by fundamental contract principles to determine whether enforcement of a particular plea agreement would yield a fair and just result. *State v. Jones*, 302 Kan. 111, 116, 351 P.3d 1228 (2015). The State leans into this principle as the foundation for its position that we are precluded from reviewing Odell's claim because it would require us to impermissibly make a finding of fact—whether an implied condition was present. It contends that Odell's appearance at the initial sentencing hearing was an implied condition of the plea agreement, and his failure to appear constituted a material breach that relieved the State from performance.

4

This court has previously discussed "'implied in fact' condition[s]," which it found were similar to express conditions but were not expressed in words, rather "'in the nature of [the parties'] undertakings.'" *Bergman v. Commerce Trust Co.*, 35 Kan. App. 2d 301, 305, 129 P.3d 624 (2006) (citing 15 Williston on Contracts § 48:1 [4th ed. 2000]; see Restatement [Second] of Contracts § 226[c] [1979]). It stated that "[c]onditions implied in fact are those which are 'necessarily inherent in the actual performance of the contract.'" 35 Kan. App. 2d at 306 (citing 13 Williston on Contracts § 38:11, p. 421 [4th ed. 2000]). Typically, the intent of contracting parties is "a question of fact" that "may be shown by acts, circumstances and inferences reasonably deducible therefrom and need not be established by direct proof." *Allegri v. Providence-St. Margaret Health Center*, 9 Kan. App. 2d 659, 663, 684 P.2d 1031 (1984). Thus, the factfinder would ordinarily determine whether an implied condition was present.

However, plea negotiations and their resultant agreements involve certain constitutional implications that are not found in traditional contractual agreements, and for that reason, the efficacy of the plea process may necessitate a different analysis. *Peterson*, 296 Kan. at 567.

*Preservation*

The next point for consideration is where the State grounds its primary argument—whether this case is even properly before us for review. Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before the court for appellate review. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Reviewing courts strictly enforce Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36), which requires an appellant to explain why they failed to raise the issue when they were before the district court and what affords an appellate court the ability to be the first to analyze the merits of the claim. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

There are three exceptions to the rule: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason. *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010). It is not enough, however, for an appellant to merely cite to or identify the exception they believe is applicable. They also bear the burden of offering a meaningful argument to justify why the issue raised warrants consideration for the first time on appeal. There is a strong likelihood that the issue will be dispensed with as improperly briefed or waived and abandoned if they fail to follow this explanatory step. See *Godfrey*, 301 Kan. at 1044.

Odell readily acknowledges that this issue is before us for the first time but accompanies that admission with an adequate explanation for why our review is justified based on the first and second exceptions set out above. It is without question that the second exception is applicable to Odell's case. The Kansas Supreme Court has previously held that when the State violates a plea agreement, the defendant's due process rights are violated. *State v. Urista*, 296 Kan. 576, Syl. ¶ 2, 293 P.3d 738 (2013). Accordingly, we agree that it is necessary to analyze the merits of Odell's claim.

*Did the State breach the plea agreement it entered into with Odell?*

The terms of the plea agreement state, in relevant part as italicized:

> "The plea that has been offered and accepted . . . is that in [this] case, in exchange for his plea of guilty or no contest to Counts Two through Five, the State would agree to dismiss the remaining counts. *The State would recommend* that these counts run concurrently and recommend a standard number in the box in which he falls, which the State anticipates to be a 32-month underlying. *That would be suspended to 24 months of supervised probation*. In addition to dismissing the charges in exchange for his plea, the State will also dismiss [a separate case] with prejudice." (Emphases added.)

6

The State does not assert that it satisfied its obligation under the plea agreement. It concedes that it did not offer a recommendation for probation that would reinforce Odell's departure motion but asserts that the plea agreement was void because Odell's failure to appear at the initial sentencing hearing constituted a material change in circumstances that inhibited the State's ability to perform. It further contends that Odell's failure to object to its withdrawal of support "deprived the State of the opportunity to argue" that a material change occurred when Odell shirked his obligation to return to the district court for his scheduled sentencing hearing.

The State and Odell entered into an oral plea agreement whereby the State assured Odell that if he entered the plea as contemplated, in turn it would dismiss Odell's additional charges and a separate case, recommend supervised probation in exchange for his plea of guilty or no contest, and agree to his release on an O.R. bond pending sentencing. The State opted not to fulfill one of its obligations, and its decision to do so amounted to a breach of the parties' agreement. We recognize the State's frustration, particularly when it required a warrant to get Odell to court for sentencing so he could receive the benefit the State ensured it would offer. The absence of a written agreement, particularly one containing an exit clause that explains when the State can properly shift course, significantly contributed to the complexity of this issue.

Having found that the State breached the plea agreement, we must decide whether that breach amounts to harmless error. In *Urista*, the Kansas Supreme Court clearly set out the test we are required to use in arriving at our determination. That is, "such a breach will constitute harmless error only if a court can say beyond a reasonable doubt that the State's promise had little, if any, influence on the defendant's decision to enter into the plea agreement." 296 Kan. at 594-95 (citing *State v. Ward*, 292 Kan. 541, 256 P.3d 801 [2011]). The harmless error rule applies even when the defendant raises the issue for the first time on appeal. *State v. McDonald*, 29 Kan. App. 2d 6, 9-11, 26 P.3d 69 (2001).

The State argues that Odell obtained the benefit of the bargain when he "received dismissal of several other charges, along with an entire case" and the State's support of an O.R. bond. In furtherance of its position, it asserts that Odell's failure to object demonstrates that the State's offer to recommend probation was not the sole factor that prompted Odell to enter into the plea, thus any error that may have occurred was harmless.

Odell takes the position that his initial failure to appear for sentencing "did not relieve the State of its duty" to comply with the plea agreement and that the State cannot establish that its promise to support his request for probation did not influence his entry into the agreement.

The harmlessness analysis focuses solely on the effect that the State's promise had on the defendant's decision to enter into the plea agreement; it is immaterial whether the sentencing court's decision was impacted by the State's breach. *Urista*, 296 Kan. at 594-95. We conclude beyond a reasonable doubt that any breached promise had minimal, if any, influence on Odell's decision to enter into the plea agreement. The crux of Odell's argument is that because he "argued forcefully at sentencing that he should not be sent to prison, and stated that he was going to appeal his prison sentence," then certainly the State's offer to recommend probation was a factor he considered when deciding whether to enter into the agreement.

We find that Odell's statements, when analyzed in their entirety, offer a different illustration of his motivation for entering into the agreement. Odell had a criminal history score of A at the time of sentencing, and the familiarity he has developed with the criminal justice system was evident from his remarks at sentencing.

While imposing Odell's sentence, the district court briefly returned to the issue of his failure to appear at the initial sentencing hearing. In response, Odell acknowledged

8

that he intentionally avoided the hearing and that he lied to the judge when he said he was on his way to the proceeding. He then explained:

> "[I]t's because I wasn't comfortable with coming as a A-box felon. I wasn't comfortable with the priors I've heard, with men that have been sentenced out of here. And, I was just trying to get a chance to get this horse, get a few more rides, to get it sold to maybe have an attorney that could come represent me."

Odell further remarked that the district court's refusal to listen to him when he said another term of imprisonment was not going to "make [him] any better" was precisely why he "bucked the law."

Accordingly, we find that, in truth, the premier gem amongst the benefits the State offered was its agreement to release Odell on his own recognizance because it afforded the freedom he craved and an opportunity to avoid the prison term he seemingly perceived as inevitable. While the State undeniably breached the plea agreement, we find the error to be harmless in light of our certainty "beyond a reasonable doubt that the State's promise [of probation] had little, if any, influence on" Odell's decision to enter into the plea agreement. See *Urista*, 296 Kan. at 594-95.

Affirmed.